JOHN EDEN *vs.* CHARLES F. CHAFFEE.

Bristol.    October 23, 1893. — November 29, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Contract — Oral Promise to pay — Statute of Frauds — Action.*

If A., in consideration of the promise of B. to pay him for work done on B.'s land for C., who has a contract with B., gives up his claim for such work against C., who, as a part of the same transaction, surrenders his contract and gives up his claim against B., the promise is not within the statute of frauds, and A. can enforce it in an action against B.

CONTRACT, to recover a balance alleged to be due the plaintiff, according to an account annexed, and in pursuance of an oral promise of payment by the defendant, for labor performed and materials furnished in constructing a cellar for the defendant. The answer, among other defences, set up the statute of frauds. Trial in the Superior Court, without a jury, before *Hopkins*, J., who allowed a bill of exceptions, in substance as follows.

It appeared in evidence that the defendant made a written contract with one George L. Titus, under which Titus was to construct a cellar and dwelling-house on the defendant's land; that Titus employed the plaintiff to build the cellar; that thereafter the plaintiff did build such cellar; and that then Titus became insolvent, and unable to complete his contract with the defendant.

Titus testified, in substance, as follows : " Before I went into insolvency I had a talk with the defendant. He asked me if I was going on with his house. I told him I did n't think I should. He asked me what was the best thing for him to do, and I told him if he would pay the plaintiff for building the cellar I would throw it out from my business altogether, and he said he would. About two days after that, he came to my house and asked for the contract, and said he was going to pay the plaintiff for building the cellar. I gave him the contracts, which were in writing. I surrendered to him the contracts, with the agreement that he should pay the plaintiff for building the cellar. I afterwards went into insolvency. No claim was made against the defendant

by me nor by my assignee for work done in building the cellar. I informed the plaintiff of the arrangements I had made, and he was satisfied to let me go, and to look to the defendant for his pay. He never presented any claim to me nor to my estate. I had no written contract with the plaintiff for building the cellar. He was to have an entire price for doing all the mason work in the house, including the cellar."

The plaintiff testified, in substance, as follows: " I made a contract with Titus to do the mason work in the house he was to build for the defendant, including the building of the cellar; the price was to be $555. I began on the cellar in July, 1891, and finished in the same month. After Titus had quitted the business there, I went to see the defendant, and asked him if I could have some money, and he said, 'I will give you some money provided Titus will give me the contract papers,' and said, ' I will go up and see him.' The next day he told me he would give me some money the following day. I went up previously and saw Titus to see if it was all right, and he said it was; that the defendant had accepted the contract papers and had agreed to pay me for the cellar if I was satisfied, and I said I was. The next day I saw the defendant, and he paid me $125, part payment on the cellar. I gave him a receipt for the amount. At that time he asked me how much I wanted, and I told him I would like to have $250, and he said he had n't got it, and all that he could give me was $125, and he would give me the rest in a day or two. He did not ask me, and I did not tell him, how much my whole bill on the cellar was. That is all the talk I had with him. I have given up my claim against Titus. I have presented no claim against his estate. I look to the defendant on his agreement to pay me. I had no subsequent conversation with him. No written promise was given to me by him."

The defendant asked the judge to rule that the evidence would not warrant a finding for the plaintiff. The judge declined so to rule; and found for the plaintiff. The defendant alleged exceptions.

*W. H. Fox*, for the defendant.

*H. J. Fuller*, for the plaintiff.

KNOWLTON, J. There was evidence to warrant a finding by the justice who heard the case that the plaintiff, in consideration

of the promise of the defendant to pay him, gave up his claim against Titus, for whom he had dug and built a cellar on the defendant's land, and that Titus at the same time and as a part of the same transaction surrendered his contract, and gave up his claim against the defendant. Here, then, was a promise on the part of the defendant, for a good consideration, to pay to the plaintiff the defendant's own debt created by the transaction, and not the debt of another; for the debt of Titus to the plaintiff then ceased to exist. The evidence and the finding warranted by it clearly make a case covered by the authorities, which hold that such a promise is not within the statute of frauds, and that the contract of which it is a part is not a collateral, but a substituted contract. *Wood* v. *Corcoran*, 1 Allen, 405. *Lord* v. *Davison*, 3 Allen, 131. *Walker* v. *Penniman*, 8 Gray, 233. *Furbish* v. *Goodnow*, 98 Mass. 296.          *Exceptions overruled.*